IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| UBUNTU HOLDINGS, LLC | : | |
| Plaintiff, | : | Case No. _____ |
| v. | : | |
| CHICAGO ATLANTIC ADMIN, LLC, as Administrative Agent and Collateral Agent, | : | |
| Defendant | : | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Ubuntu Holdings, LLC ("**Ubuntu**"), by and through legal counsel, alleges the following in support of this Complaint.

### *The Parties and Their Relationship*

1. Ubuntu is a Delaware limited liability company with a registered address of 8 The Green, Suite A, Dover, Delaware 19901.

2. Defendant Chicago Atlantic Admin, LLC is a Delaware limited liability company referred to below as "**Chicago Atlantic**" with a registered address of 919 North Market Street, Suite 950, Wilmington, DE 19801.

3. Under that certain Credit Agreement dated September 3, 2021, and the documentation related thereto, Chicago Atlantic loaned certain sums to Ubuntu and its wholly-owned subsidiaries.

4. Those subsidiaries are: Parea Biosciences LLC ("**Parea**"); Keystone Center of Integrative Wellness, LLC ("**KCIW**"); MNK 03 Holdings LLC ("**MNK**"); and Artanor, LLC ("**Artanor**"). Parea, KCIW, MNK, and Artanor are collectively referred to below as the "**Subsidiaries**".

5. The repayment of the sums lent by Chicago Atlantic to Ubuntu is secured pursuant to a "**Security Agreement**" also dated September 3, 2021. A true and correct copy of the Security Agreement is attached to this Complaint at **Exhibit 1**.

6. As set forth in more detail below, the parties' dispute arises under the Security Agreement.

*Venue in This Court is Proper and the Court's Jurisdiction Is Sound*.

7. As explained in more detail below, Chicago Atlantic takes the position that the Security Agreement granted it the right to sell the equity of the Subsidiaries to itself at a pre-judgment, "non-judicial UCC Article 9 sale".

8. Ubuntu disputes Chicago Atlantic's position.

9. Under Section 8.11(a) of the Security Agreement, each party has submitted to, and all disputes arising out of and relating to the Security Agreement must be submitted to, the jurisdiction of either a "state court of the State of Illinois sitting in Cook County" or in "The United States District Court of the Northern District of Illinois." Exh. 1 at 25.

10. Jurisdiction lies in this Court if (*i*) there is complete diversity between Ubuntu and Chicago Atlantic and (*ii*) the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

11. For purposes of diversity jurisdiction, the citizenship of a limited liability company is based on the citizenship of its members. Wise v. Wachovia Sec., LLC, 450 F.3d 265, 267 (7th Cir. 2006) (citations omitted).

12. Ubuntu is owned solely by Krista Krebs and Aaron Krebs.

13. Both Krista Krebs and Aaron Krebs are citizens of, and domiciled, in Pennsylvania.

14. Accordingly, Ubuntu is a citizen of Pennsylvania for purposes of diversity jurisdiction. See Wise, 450 F.3d at 267.

15. Upon information and belief, Chicago Atlantic Admin LLC is a wholly owned subsidiary Chicago Atlantic Real Estate Finance, Inc.

16. According to SEC filings, Chicago Atlantic Real Estate Finance, Inc.'s "principle executive offices" are located at 1680 Michigan Avenue, Suite 700, Miami Beach, Florida, and it is incorporated in Maryland. Chicago Atlantic Real Estate Finance Inc., Annual Report (Form 10-K) (March 12, 2024).

17. Thus, upon information and belief, Chicago Atlantic Real Estate Finance, Inc.'s "nerve center" is in Florida.

18. Accordingly, Chicago Atlantic Real Estate Finance, Inc. is domiciled in and a citizen of Florida for purposes of diversity jurisdiction. Hertz Corp. v. Friend, 559 U.S. 77, 92-93 (2010).

19. Chicago Atlantic Real Estate Finance, Inc. is also a citizen of Maryland, the state of its incorporation. *Id*.

20. Accordingly, Chicago Atlantic is a citizen of Maryland and Florida for purposes of diversity jurisdiction. See Wise, 450 F.3d at 267.

21. Thus, there is complete diversity between the parties – Ubuntu is a citizen of Pennsylvania, whereas Chicago Atlantic is a citizen of Maryland and Florida. 28 U.S.C. § 1332.

22. "In suits seeking the equitable remedies of an injunction or a declaratory judgment, the amount in controversy is determined by the value to the plaintiff (or petitioner) of the object of the litigation." America's MoneyLine, Inc. v. Coleman, 360 F.3d 782, 786 (7th Cir. 2004), citing Hunt v. Washington State Appel Adver. Comm'n, 432 U.S. 333, 347 (U.S. 1977).

23. According to the "Bills of Sale" that Chicago Atlantic created pursuant to which it allegedly transferred ownership of the equity in the Subsidiaries to itself at the pre-judgment, "non-judicial UCC Article 9 sale", the value of that equity is $19,000,000.

24. Ubuntu agrees the equity is worth at least $19,000,000.

25. Accordingly, the amount in controversy is more than $75,000.

26. There being diversity between Ubuntu and Chicago Atlantic and the amount in controversy being more than $75,000, this Court has federal diversity jurisdiction over this matter. 28 U.S.C. § 1332.

***Chicago Atlantic Claims It Acquired the Equity of the Subsidiaries at a Pre-Judgment, "Non-Judicial UCC Article 9 Sale".***

27. Although Chicago Atlantic claims Ubuntu and the Subsidiaries are in default under the Credit Agreement, Chicago Atlantic has not obtained a monetary judgment against Ubuntu or any of the Subsidiaries in any jurisdiction.

28. Nevertheless, in early August of 2023, Chicago Atlantic published a "Notice of Disposition of Collateral Via Public Sale" in various media outlets claiming it planned to liquidate the assets and the equity of Ubuntu and the Subsidiaries. A true and correct copy of the Notice is attached to this Complaint at **Exhibit 2**.

29. The Notice does not specify what, if any, legal authority Chicago Atlantic relied on in scheduling the purported sale.

30. As alluded to above, according to a Bill of Sale dated August 10, 2023 that Chicago Atlantic prepared and signed over to itself, Chicago Atlantic purportedly sold itself the equity of KCIW and Artanor for $14,000,000. A true and correct copy of the Bill of Sale is attached to this Complaint at **Exhibit 3**.

31. According to a second Bill of Sale dated August 10, 2023 that Chicago Atlantic prepared and signed over to itself, Chicago Atlantic purportedly sold itself the equity of Parea and MNK for $5,000,000. A true and correct copy of the second Bill of Sale is attached to this Complaint at **Exhibit 4**.

*Chicago Atlantic Triggers an Avalanche of Duplicative and Failed Litigation in Pennsylvania.*

32. On August 15, 2023, Chicago Atlantic filed a Complaint sounding in "trespass" and an "*Ex Parte* Petition for Writ of Possession" in the Lycoming County Court of Common Pleas in Williamsport, Pennsylvania at docket CV-2023-00902 (the "**Lycoming Action**").

33. On August 14, 2023, Chicago Atlantic filed a second Complaint and a second "*Ex Parte* Petition for Writ of Possession" in the Northumberland County Court of Common Pleas in Sunbury, Pennsylvania at docket CV-23-1468 (the "**Northumberland Action**").

34. On August 25, 2023, Chicago Atlantic filed a third Complaint and a third "*Ex Parte* Petition for Writ of Possession" in the Centre County Court of Common Pleas in Bellefonte, Pennsylvania at docket 2023-CV-2048-CI (the "**Centre Action**").

35. On August 31, 2023, Chicago Atlantic filed a fourth Complaint and a fourth "*Ex Parte* Petition for Writ of Possession" in the Snyder County Court of Common Pleas in Middleburg, Pennsylvania at docket CV-402-2023 (the "**Snyder Action**").

36. In each of the Pennsylvania-based Actions, Chicago Atlantic took the position that it acquired the equity of the Subsidiaries at a pre-judgment, "non-judicial UCC Article 9 sale" conducted on August 10, 2023.

37. According to Chicago Atlantic's thinking, since it acquired the Subsidiaries, it is entitled to a "writ of possession" for certain assets and privileges owned by or, as the case may be, granted to the Subsidiaries.

5

38. Thus, in each of the Pennsylvania-based Actions, the threshold points of legal contention were virtually identical.

39. Ubuntu and the Subsidiaries raised two main contentions in the Pennsylvania-based Actions.

40. First, Ubuntu and the Subsidiaries contended that Chicago Atlantic's purported sale of the equity in the Subsidiaries to itself at the so-called "non-judicial UCC Article 9 sale" is invalid and *ultra vires* for the simple reason that the equity is specifically exempted from the UCC under Chicago Atlantic's own Security Agreement.

41. Second, under Pennsylvania law, a "writ of possession is simply the legal means for executing on a judgment of possession" for real estate. Johnson v. Martofel, 797 A.2d 943, 947 (Pa. Super. 2002). It is nothing more than an execution procedure that is ministerially carried out by the prothonotary in response to entry of a judgment. Because Chicago Atlantic never obtained a judgment for possession of real estate against Ubuntu or any of the Subsidiaries, its demand for a writ of possession made no sense.

***Chicago Atlantic's Petition in the Lycoming Action is Denied, and Chicago Atlantic Reacts by Immediately Withdrawing the Centre Action and the Northumberland Action***.

42. By Opinion and Order dated December 28, 2023, the Lycoming County Court denied Chicago Atlantic's *Ex Parte* Petition. A true and correct copy of the Court's Opinion and Order is attached to this Complaint at **Exhibit 5**.

43. Among other things, in denying Chicago Atlantic's *Ex Parte* Petition, the Court concluded Chicago Atlantic had not proven it was entitled to any remedy and that Chicago Atlantic must utilize judicial procedure to obtain the relief it seeks.

44. In the wake of the Lycoming County Court's adverse Opinion and Order, given the threshold issues in each of the Pennsylvania-based Actions are substantially identical, Chicago

Atlantic immediately withdrew both the Centre Action and the Northumberland Action. True and correct copies of Chicago Atlantic's withdrawals in the Centre Action and in the Northumberland Action are attached to this Complaint at **Exhibit 6**.

45. Importantly, given the Lycoming County Court concluded a writ of possession cannot be issued under Pennsylvania law without an underlying judgment, the Lycoming County Court did not need to, and therefore did not, decide the issue of whether Chicago Atlantic's alleged sale of the equity to itself in the Subsidiaries at the so-called "non-judicial UCC Article 9 sale" is invalid and *ultra vires*.

46. However, as the Court noted in its Opinion:

> The Court finds the [Ubuntu's] arguments concerning the validity of the sale by virtue of the Security Agreement's exclusion of the stock of Parea, KCIW, MNK and Artanor from the UCC to be ***particularly compelling***.

Exh. 5 at 14, n. 77 citing Part II, BI (i.e. pgs. 8 – 9) (emphasis added)

### *Chicago Atlantic Did Not Acquire the Equity of the Subsidiaries.*

47. As noted above, in the Pennsylvania-based Actions, Chicago Atlantic took the position that it was authorized under the Security Agreement to foreclose on the equity of the Subsidiaries at the so-called "non-judicial UCC Article 9 sale".

48. However, the Security Agreement, which Chicago Atlantic drafted, contradicts and defeats Chicago Atlantic's position.

49. Under Section 1.1(b) of the Security Agreement, the term "Pledged Stock" refers to the equity of the Subsidiaries. Exh. 1 at 4, citing Schedule 1.

50. Under Section 1.1(b) of the Security Agreement, the term "Pledged Stock" is defined as "Investment Property." Exh. 1 at 3.

7

51. Under Section 4.6(f) of the Security Agreement, Ubuntu and the Susidiaries and Chicago Atlantic agreed that "[n]one of the Pledged Stock. . .is a security governed by Article 8 of the Uniform Commercial Code as in effect in any relevant jurisdiction." Exh. 1 at 8.

52. To further emphasize the point that the equity of the Subsidiaries is excluded from the scope of the UCC, Section 5.4(d) of the Security Agreement provides that Ubuntu will not opt in the equity of any of the Subsidiaries to the UCC absent Chicago Atlantic's prior written consent. Exh. 1 at 12.

53. Under Article 9 of the UCC, there is a narrowly-tailored, pre-judgment mechanism that allows a creditor to sell the assets of a debtor at a public sale under certain circumstances – including a debtor's "investment property." 810 ILCS § 5/9-610.

54. Obviously, however, that remedy only applies to "investment property" that falls within the scope of the UCC.

55. "Investment property" falls within the scope of the UCC if it constitutes a "security" under UCC Article 8. 810 ILCS § 5/9-102(a)(49) (defining investment property as a "security"); 810 ILCS § 5/9-102(b), citing 810 ILCS § 5/8-102(a)(15) (defining the term "security").

56. As the parties' Security Agreement makes plain, Ubuntu and Chicago Atlantic expressly agreed that "none" of the equity of any of the Subsidiaries is "a security governed by Article 8 of the Uniform Commercial Code." Exh. 1 at 8.

57. Hence, under the Security Agreement, the equity of the Subsidiaries is specifically excluded from the scope of the UCC. Exh. 1 at §§ 1.1(b), 4.6(f), and 5.4(d).

58. Per the terms of the UCC itself, the parties' express agreement to exclude the equity of the Subsidiaries from the scope of the UCC is fully binding on, and enforceable against, the

8

parties. 810 ILCS § 5/9-201(a)("Except as otherwise provided in the Uniform Commercial Code, a security agreement is effective according to its terms between the parties. . ."); accord 810 ILCS § 5/1-302(a).

59. As such, because "none" of the equity of any of the Subsidiaries is subject to the UCC or is a "security" under the UCC, Chicago Atlantic could not have sold the equity to itself at a "UCC sale."

60. Accordingly, the only way Chicago Atlantic can acquire and foreclose on the equity of the Subsidiaries is to obtain a "judgment" (which it has not done) against Ubuntu (the owner of that equity) and to then pursue a charging order from the courts against distributions attributable to the equity. See 6 Del.C. § 18-703(d) ("The entry of a charging order is the *exclusive* remedy by which a *judgment* creditor of a member or a member's assignee may satisfy a judgment out of the judgment debtor's limited liability company interest and attachment, garnishment, foreclosure or other legal or equitable remedies are not available to the judgment creditor, whether the limited liability company has 1 member or more than 1 member.") (emphases added).

***Chicago Atlantic Has Taken Actions Based on Its Inaccurate Legal Position that Continue to Substantially Disrupt Ubuntu and its Subsidiaries' Business Operations.***

61. Under Section 8.10 of the Security Agreement, disputes between the parties are subject to Illinois law. Exh. 1 at 24.

62. Pursuant to 735 ILCS § 5/2-701, parties are authorized to seek declaratory relief under Illinois law.

63. Under 735 ILCS § 5/2-701, a declaratory judgment action is ripe and justiciable if it relates to an "actual controversy."

64. In Pennsylvania, Ubuntu and the Subsidiaries have been working diligently to open two new dispensaries – one in State College and a second in Shamokin Dam.

65. For months, Chicago Atlantic has taken aggressive and extraordinary steps to disrupt and sabotage every aspect of Ubuntu and the Subsidiaries' business operations with the stated goal of seizing control and ownership of the operations.

66. As part of that effort, Chicago Atlantic has told the landlords for the dispensary locations in State College and Shamokin Dam and the contractors working on the dispensary build outs at those locations that Chicago Atlantic now owns the Subsidiaries and that only Chicago Atlantic's personnel are authorized to act on behalf of the Subsidiaries.

67. In support of its claims, Chicago Atlantic has provided third-parties with copies of the Bills of Sale that Chicago Atlantic signed over to itself and has even posted those Bills of Sale on the exterior, publicly facing doors and walls at the dispensary locations. A true and correct copy of photographic evidence to that effect is attached to this Complaint at **Exhibit 7**.

68. In the case of Shamokin Dam, KCIW had to go to Court to obtain a preliminary injunction requiring the Landlord to give KCIW possession of the premises back. A true and correct copy of that preliminary injunction is attached to this Complaint at **Exhibit 8**.

69. The locations in State College and Shamokin Dam are subject to Pennsylvania Department of Health ("**PDOH**") medical marijuana permits, and PDOH requires that the dispensaries be completed and opened to the public within set timeframes.

70. By overtly interfering with Ubuntu and the Subsidiaries' relationships with landlords and contractors, Chicago Atlantic has intentionally and substantially delayed the opening of the dispensaries.

71. A legitimate lender would have a vested interest in getting the dispensaries up and running so that cash flow could be generated from the dispensaries to service the loans.

72. However, Chicago Atlantic has shown no desire to ever be paid back.

73. To the contrary, Chicago Atlantic's plan from day one has been to lend to Ubuntu and the Subsidiaries on excessively burdensome terms, to require Ubuntu and the Subsidiaries to inject significant equity into the medical marijuana operations as a condition to lending, to declare Ubuntu and the Subsidiaries in default of terms that are impossible to comply with, and to then use those defaults as a pretext for seizing control of the business operations conducted by Ubuntu and the Subsidiaries at values that are enhanced by their millions in equity infusions.

74. Indeed, upon information and belief, Chicago Atlantic has seized the operations of numerous medical marijuana operations that it supposedly "lent" money to.

75. Chicago Atlantic's efforts to sabotage Ubuntu and the Subsidiaries' operations go far beyond triggering an avalanche of baseless litigation and interfering with relationships with landlords and contractors to include, among other things, (**a**) a senior Chicago Atlantic executive sending inappropriate text and social media communications to relatives of the Krebs (including one of their children), (**b**) another senior Chicago Atlantic executive threatening the Krebs (the owners of Ubuntu), in writing no less, with "unrelenting pressure personally and financially", (**c**) coaxing employees to misappropriate confidential information of Ubuntu and the Subsidiaries; (**d**) poaching key employees from Ubuntu and the Subsidiaries, and (**e**) hiring a "lobbyist" to try to manipulate PDOH into believing Chicago Atlantic now "owns" the Subsidiaries.

76. Indeed, Chicago Atlantic's behavior is more akin to that of a back-alley loan shark than it is to that of a legitimate lender.

77. For example, New York State Senators Liz Krueger and Gustavo Rivera recently "demand[ed] the state [of New York] cease making loans through Chicago Atlantic and make whole those trapped in the predatory deal." Rosalind Adams, *State Senators Call for Investigation of Cannabis Fund After Reading CITY Exposé,* THE CITY, June 13, 2024,

11

https://www.thecity.nyc/2024/06/13/state-senators-cannabis-chicago-atlantic-investigation/ ("THE CITY's investigation found that officials of the state's Office of Cannabis Management, or OCM, had repeatedly warned the governor's office for months about how the cannabis investment fund was being managed.").

78. The only justification Chicago Atlantic offers for its behavior is the fiction that it sold itself the equity of the Subsidiaries at the so-called "non-judicial UCC Article 9 sale".

79. Accordingly, the question of whether Chicago Atlantic truly did sell itself that equity is an "active controversy" that has substantial and ongoing real-world implications. 735 ILCS § 5/2-701.

## COUNT I

## DECLARATORY JUDGMENT

80. The allegations set forth above are incorporated into this Count by reference.

81. Under Illinois law, the elements of a declaratory action are: (*i*) a plaintiff with a tangible interest in the subject matter of the action, (*ii*) a defendant with an opposing interest, and (*iii*) an actual controversy concerning such interests. Gustafson v. Finn, No. 90 C 06822, 1991 WL 32745 at *2 (N.D. Ill. March 7, 1991) (citation omitted).

82. Ubuntu has a tangible interest in resolving the issue of whether Chicago Atlantic did, in fact, acquire the equity of its wholly owned Subsidiaries (i.e., Parea, KCIW, MNK, and Artanor) at the so-called "non-judicial UCC Article 9 sale".

83. For the reasons detailed above, Ubuntu contends that Chicago Atlantic could not have acquired the equity of the Subsidiaries at the so-called "non-judicial UCC Article 9 sale".

84. Chicago Atlantic takes the opposite position.

85. As detailed above, pending resolution of the controversy, Ubuntu and the Subsidiaries' business relationships and operations will remain in flux and vulnerable – subject to unending interference by Chicago Atlantic.

WHEREFORE, Ubuntu respectfully requests that this Court enter a judgment in its favor declaring and confirming that the Defendant did not acquire the equity of any of the Subsidiaries at the so-called "non-judicial UCC Article 9 sale" and granting such other relief as the Court deems appropriate.

Dated: July 2, 2024                                         Respectfully Submitted,

**SAUL EWING**

*/s/: James A. Morsch, Esq*.
James A. Morsch (#6209558)
Thomas Laser (#6324217)
Nathan Henderson (#6339097)
161 North Clark Street
Suite 4200
Chicago, IL 60601
 (312).876.7866
jim.morsch@saul.com
Firm No. 62702

**SAXTON & STUMP**
280 Granite Run Drive
Suite 300
Lancaster, PA  17602
 (717).556.1033
jconfair@saxtonstump.com

Motion for *Pro Hac Vice* Admission Forthcoming

13